UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, )
Plaintiff, )
)
vs. ) Criminal Action
) No. 04-10323-RJS
)
FRANCIS P. SALEMME, SR., )
Defendant. )

**CHANGE OF PLEA**

BEFORE THE HONORABLE RICHARD J. STEARNS
UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
April 14, 2008
2:38 p.m.

* * * * *

CATHERINE A. HANDEL, RPR-CM
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5205
Boston, MA 02210
(617) 261-0555



PDF created with pdfFactory trial version www.pdffactory.com

APPEARANCES:

For the Plaintiff:

UNITED STATES ATTORNEY'S OFFICE
(by AUSA Brian T. Kelly and
AUSA Fred M. Wyshak, Jr.)
John Joseph Moakley Federal Courthouse
1 Courthouse Way, Suite 926
Boston, MA 02210

For the Defendant:

GEORGE & DAVIS, PC
(by Robert A. George, Esq.)
509 Main Street
P.O. Box 199
Sturbridge, MA 01566

-and-

LAW OFFICE OF KEVIN J. REDDINGTON
(by Kevin J. Reddington, Esq.)
1342 Belmont Street
Suite 203
Brockton, MA 02301

-and-

LAW OFFICE OF STEVEN C. BOOZANG
(by Steven C. Boozang, Esq.)
450 Washington Street
Suite LL9
Dedham, MA 02026



PDF created with pdfFactory trial version www.pdffactory.com

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Richard J. Stearns, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on April 14, 2008.

The defendant, Francis P. Salemme, Sr., is present with counsel. Assistant United States Attorneys Brian T. Kelly and Fred M. Wyshak, Jr., are present.)

THE CLERK: This is United States of America versus Francis P. Salemme, Sr., Criminal No. 04-10323. Would all counsel please identify themselves for the record.

MR. KELLY: Good afternoon. Brian Kelly and Fred Wyshak for the United States.

MR. GEORGE: Robert George for Mr. Salemme, your Honor.

MR. BOOZANG: Good afternoon. Steve Boozang for Mr. Salemme, your Honor.

MR. REDDINGTON: Kevin Reddington, your Honor, for Mr. Salemme.

THE COURT: Mr. Boozang, I understand you're going to be speaking for the defendant.

MR. BOOZANG: Yes, your Honor.



PDF created with pdfFactory trial version www.pdffactory.com

THE COURT: I have a copy of the plea agreement. Of course, I was given prior notice by the parties of the intention to enter into the agreement, and it's my understanding, both from the text of the agreement itself and from our prior conference, that the defendant is pleading guilty to both counts of the indictment; is that correct?

MR. KELLY: Yes, your Honor, that's correct. We do have a brief housekeeping matter that I would like to ask the Court about at sidebar, if the Court has a moment.

THE COURT: All right.

AT THE BENCH:

MR. KELLY: Your Honor, the marshals have requested just now -- because Mr. Salemme is in a witness security facility, they've asked that the Court instruct the sketch artist not to sketch Mr. Salemme. The government takes no position on this request, but we did tell the marshal that we would convey -- we would note that he's been sketched and photographed before and, frankly, the issue may be moot, given the fact --

THE COURT: Just very quickly. Everybody knows what he looks like. I don't have any authority to tell them not to. I have authority to say you can't film in the courtroom. I can't say you can't sketch.



PDF created with pdfFactory trial version www.pdffactory.com

So --

MR. KELLY: Okay. Thank you, your Honor.

(End of sidebar conference.)

THE COURT: Housekeeping disposed of. The Clerk can take the plea.

THE CLERK: Mr. Salemme, would you stand, please.

Francis P. Salemme, Sr., Count 1 of the indictment 04-10323 charges you with obstruction of justice on or about November 2nd, 1999, in the District of Massachusetts, all in violation of Title 18, United States Code Section 1503, to which count you have previously pled not guilty. Do you now wish to change your plea?

THE DEFENDANT: I do.

THE CLERK: And how do you plead to this indictment?

THE DEFENDANT: How do I plead?

THE CLERK: Yes.

THE DEFENDANT: Guilty.

THE CLERK: Mr. Salemme, Count 2 of the indictment charges you with making false, fictitious and fraudulent statements in a matter within the jurisdiction of the Executive Branch of the government of the United States in that you knowingly and willfully



PDF created with pdfFactory trial version www.pdffactory.com

made materially false, fictitious and fraudulent statements to government prosecutors employed by the United States Attorney's Office and federal agents employed by the United States Drug Enforcement Administration and the Federal Bureau of Investigation, all in violation of Title 18, United States Code Section 1001(a)(2), to which count you have previously pled not guilty. Do you now wish to change your plea?

THE DEFENDANT: I do.

THE CLERK: How do you plead to Count 2 of this indictment?

THE DEFENDANT: Guilty.

THE CLERK: Would you raise your right hand, sir. Do you solemnly swear that you will tell the truth, the whole truth and nothing but the truth in the matter now in hearing, so help you God?

THE DEFENDANT: I do.

THE CLERK: Take your seat right up there. Mr. Boozang, would you stand beside him, please.

MR. BOOZANG: Certainly, Madam Clerk.

(Francis p. Salemme takes the witness stand.)

THE COURT: Please sit down, Mr. Salemme.

Mr. Salemme, my name is Richard Stearns. As you know, I'm a judge in the United States District Court. I'm going to ask you a few preliminary


PDF created with pdfFactory trial version www.pdffactory.com

questions. The purpose of the questions, as I know you're aware, is to assist me in making my own determination that your decision to plead guilty is voluntary and one made with full knowledge of the consequences of pleading guilty. I don't mean in any way to be confusing, but if anything I say seems imprecise or confusing, either ask me to rephrase it or feel free to consult with Mr. Boozang before you answer.

THE DEFENDANT: Thank you, your Honor.

THE COURT: Just for the record, would you state your full name.

THE DEFENDANT: Frank P. Salemme.

THE COURT: Mr. Salemme, you're now how old?

THE DEFENDANT: 75.

THE COURT: 75. You were born in Massachusetts?

THE DEFENDANT: I was.

THE COURT: And you grew up in Massachusetts?

THE DEFENDANT: I did.

THE COURT: How far did you go in school?

THE DEFENDANT: I went to the 12th grade, graduated and took extension courses of various types, University of Massachusetts and Boston University while


PDF created with pdfFactory trial version www.pdffactory.com

I was incarcerated at MCI Walpole and MCI Norfolk.

THE COURT: Did you earn any further degrees or certificates?

THE DEFENDANT: Did I earn any further --

THE COURT: Degrees.

THE DEFENDANT: I did, yes.

THE COURT: What were they?

THE DEFENDANT: In English and in European history, associate's degrees.

THE COURT: Modern European history or --

THE DEFENDANT: It was modern history because it was back in 1970. So, it's not so important anymore.

THE COURT: Well, European is an old --

THE DEFENDANT: I understand. And I'm also a licensed electrician. I went to electrician school, and I went to extension courses at Harvard University, extension courses at MIT and -- to obtain the license -- Massachusetts electrician's license.

THE COURT: Did you practice in the trade?

THE DEFENDANT: Yes, I did. I'm a member of Local 103. They're currently located at Freeport Street in Dorchester. I've been a member there since 1956. I was discharged from the army in 1954.

THE COURT: You were in the army?


PDF created with pdfFactory trial version www.pdffactory.com

THE DEFENDANT: Yes, I was.

THE COURT: And honorably discharged?

THE DEFENDANT: Yes, sir.

THE COURT: Where did you serve?

THE DEFENDANT: Pardon me, sir?

THE COURT: Where did you serve?

THE DEFENDANT: During the Korean Conflict, I served in Europe, United States Forces in Austria.

THE COURT: And what was your rank on discharge?

THE DEFENDANT: I went as high as PFC.

THE COURT: PFC?

THE DEFENDANT: I was drafted. I wasn't a real army man.

THE COURT: Your family is in Massachusetts?

THE DEFENDANT: They are, sir.

THE COURT: This question I ask, I'm not in any sense trying to be intrusive or to embarrass you. I'm required to ask it. Have you ever been treated for any mental or psychological problem?

THE DEFENDANT: No, I haven't, your Honor.

THE COURT: Are you taking any prescription medication at the present?

THE DEFENDANT: No, I'm not, your Honor --



PDF created with pdfFactory trial version www.pdffactory.com

I'm taking for -- some prescription medication upon my request for nerve damage in the cervical disk that I had disintegrated in my back, C4, C5 and C6.

THE COURT: Is this in the nature of a painkiller?

THE DEFENDANT: Pardon?

THE COURT: Is this in the nature of a painkiller?

THE DEFENDANT: Yes.

THE COURT: When did you last take the medication?

THE DEFENDANT: I take it as I need it. Probably about four days ago.

THE COURT: So, nothing that would, as you sit here --

THE DEFENDANT: Impair my decision?

THE COURT: Yes.

THE DEFENDANT: No.

THE COURT: Impair your ability to understand the proceedings?

THE DEFENDANT: Absolutely not, your Honor.

THE COURT: I know the lawyers are very thorough, but I will ask for the record. They have discussed the indictment with you?

THE DEFENDANT: Yes, they have, sir.



PDF created with pdfFactory trial version www.pdffactory.com

THE COURT: And the -- what lawyers would call the elements of each of the two counts? By "elements" I mean the essential components of the indictments that the government would have to prove beyond a reasonable doubt to obtain convictions.

THE DEFENDANT: I understand that, your Honor.

THE COURT: Okay. You understand, essentially, the nature of the charge of obstruction of justice?

THE DEFENDANT: Yes, I do, sir.

THE COURT: It's set out in a narrative form in Count 1 of the indictment, but obviously the government would -- and this would be essential to the case -- have to approve -- I'm sorry -- have to prove that any information that you did provide that was false was knowingly false and was provided with the intent, in fact, to in some fashion impede the government in its attempt to, in effect, carry forward in this case the investigation that's described at length in the indictment. Do you understand that?

THE DEFENDANT: I understand, your Honor.

THE COURT: You also understand that the same would be true of the second count of the indictment. That is, a statement to be false has to be


PDF created with pdfFactory trial version www.pdffactory.com

knowingly so, and that is what is, in fact, alleged in the second count in the indictment. The statements were given to officers of the United States that you knew at the time were false when given. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I know it's recited in the plea agreement, but for the record, could the government state the maximum statutory term.

MR. KELLY: Yes, your Honor.

With respect to Count 1, the obstruction of justice charge, the maximum is ten years incarceration, three years supervised release, $250,000 fine, and $100 special assessment.

The second count, Count 2, false statement, that's a five-year maximum, also $100 special assessment, $250,000 fine, and three years supervised release.

THE COURT: All right. Mr. Salemme, do you understand that these are the maximum penalties?

THE DEFENDANT: I understand, your Honor, yes.

THE COURT: All right. Of more importance to this proceeding, I think, is the plea agreement that's been reached in the case. What I'm going to do is ask the prosecutor to summarize the essential and


PDF created with pdfFactory trial version www.pdffactory.com

material parts of the agreement itself. I know that it has been reduced to writing. Mr. Salemme, I see your signature acknowledging that you, in fact, have read the agreement, you've discussed it with counsel, you're confident that you understand the terms of the agreement, but if after the prosecutor summarizes the terms of the agreement itself, if there are any remaining lingering questions about the agreement, this would be the opportunity to ask them.

THE DEFENDANT: Thank you, your Honor. I understand.

THE COURT: Mr. Kelly.

MR. KELLY: Yes, your Honor.

Briefly, the defendant, as the Court indicated, is, in fact, pleading to both charges in the indictment, which involves the same course of contact and, therefore, involves the same Guideline analysis.

The parties have analyzed this and are tendering this plea pursuant to -- it's a (b) plea, and the parties believe the Guidelines for this plea will result in a 51- to 63-month range. The parties are jointly recommending 60 months incarceration at the time of sentencing, but this analysis includes just two levels off for acceptance of responsibility, and this analysis also is based upon the Guidelines which result


PDF created with pdfFactory trial version www.pdffactory.com

from First Circuit law and the Guidelines in §2J1.2, which links his false proffer at the time to the case that was then pending, the RICO case before Judge Wolf.

So, ultimately the parties believe the analysis would result in a level 20 and range at 51 to 61 months. Therefore, we are going to be recommending 60 months at the time of sentence.

THE COURT: That is what is set out, as I understand it, both in Paragraphs 3 and 4 of the agreement?

MR. KELLY: Yes, your Honor.

THE COURT: And there is a waiver of the right of appeal?

MR. KELLY: Yes, your Honor.

THE COURT: That's in Paragraph 6.

And the usual understanding is correct as a matter of law that the agreement binds the government and the defendant, but not necessarily the Court and the provision to which it's offered.

MR. KELLY: Yes, your Honor.

THE COURT: But, Mr. Salemme, again, I think the agreement is clear. The terms are set out at some length in the agreement itself. I think there is nothing that requires any extended comment on my part about the agreement other than to impress upon you that


PDF created with pdfFactory trial version www.pdffactory.com

the waiver of appeal in Paragraph 6 is a binding waiver in this sense. When these waivers first began to appear in plea agreements, they were very controversial, but over the years every Court of Appeals has looked at the waivers and found them valid, and the reasoning is this. That a plea agreement is a contract between a defendant and the government, each giving certain considerations in exchange for the agreement reached. An agreement to waive the right to appeal, either on direct appeal or what we call collateral challenge or something that would cause habeas proceedings, is an enforceable agreement if it is supported by consideration, and it certainly appears from this agreement that such consideration exists.

So, the bottom line, so to speak, with respect to this provision is that you are trusting me to exercise my discretion lawfully. Obviously, if I ever imposed an unlawful sentence, no agreement could prevent you from appealing, but if the sentence I impose is lawful, the waiver is binding. Do you understand that?

THE DEFENDANT: I do, your Honor.

THE COURT: Let me explain, because the reference is made both by the prosecutor and certainly at length in the agreement to the Sentencing Guidelines, and I know these have been explained at length to you by


PDF created with pdfFactory trial version www.pdffactory.com

counsel.

But let me simply say that the Guidelines are the outcome of now something 25 years of experience with the sentencing format in the mid 1980s. At the time the Guidelines were put into place, they were intended to be advisory, but also intended to curtail, to something degree, the historic discretion that judges have exercised over sentencing matters.

At the time the Guidelines were instituted by Congress, there was a sense that federal judges were sentencing in too inconsistent a manner in cases that seemed similar, where defendants seemed similarly situated. Something of these disparities were geographical. Something, embarrassingly enough, seemed to be influenced by factors like gender or ethnicity. Sometimes the disparities would appear from the very same Court where different judges would bring different philosophies at sentencing to the table. Congress wanted more uniformity, and that's what the Sentencing Guidelines set out to accomplish.

For a period of time when they were first introduced, they were advisory, but as they began to be interpreted by the Court of Appeals, they began to take on more and more rigid aspect until the point of later in their history they were almost believed to be


PDF created with pdfFactory trial version www.pdffactory.com

mandatory by both appellate judges and, of course, by the sentencing judges who follow the direction of the appellate courts.

This trend disturbed the Supreme Court, and something three years ago led the Supreme Court to rule that the Guidelines, if applied in a mandatory fashion, were unconstitutional, not that there isn't a great deal of wisdom dispelled in the Guidelines, but that judges were to look at them as guidelines and not fail to exercise the discretion that the judge is expected to bring to the case, as the judge is expected to look at the events, look at the circumstances of the defendant, and ensure to his or her satisfaction that the sentence being imposed is both reasonable and appropriate.

So, when we say "discretion," we mean the judge's responsibility to look at the case carefully, to make certain that the Guideline recommendation and that the attorney's recommendation in a case is the right sentence under the circumstances.

So, I do what I think all federal judges understand the Supreme Court to tell us now to do. I will look first at the Guidelines and we all agree on what the Guidelines tell us. I then look to the recommendation of the attorneys and, whereas, here there is a mutally-agreed recommendation as both your lawyers


PDF created with pdfFactory trial version www.pdffactory.com

and the government have come to an agreement, that will have a very influencial bearing on the ultimate decision I make, but then ultimately I have to bring that discretion to bear, but the only -- and the last thought I simply add to this explanation is that as long as, as I said before, I exercise this discretion lawfully, even if you disagree with the way that discretion is deployed, that is not a basis under which an appeal can be -- I'm sorry -- a plea can be withdrawn or an appeal taken. Do you understand that? That was long --

THE DEFENDANT: I understand it, your Honor.

THE COURT: You understand?

THE DEFENDANT: Yes, I do.

THE COURT: What I'm getting at is that ultimately I am responsible for the sentence. The contract, the agreement, is binding between the government and you, but the Court is not a party to that contract. I still have to look at it as a judge and ensure that the terms are reasonable and fair to everybody involved, including the public, you and the government.

THE DEFENDANT: I understand that, your Honor.

THE COURT: You understand that?


PDF created with pdfFactory trial version www.pdffactory.com

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand by pleading guilty, you're giving up your right to have the case tried before a jury?

THE DEFENDANT: I do.

THE COURT: I should know, but I don't recall. Have you had any prior experience with a jury trial?

THE DEFENDANT: If I had what?

THE COURT: Have you actually sat through a jury trial?

THE DEFENDANT: Did I have a jury trial at one time?

THE COURT: Yes.

THE DEFENDANT: Yes, I did.

THE COURT: So, you've seen the --

THE DEFENDANT: Yes, I have, I've seen a jury in action. Yes, I have.

THE COURT: Then I don't think I need to belabor the point.

As you know, the jury is a panel of twelve randomly chosen citizens who, under our Constitution, the defendant and the government insist make the ultimate determination as to whether a person is guilty or not guilty of a crime. As you know from what you've


PDF created with pdfFactory trial version www.pdffactory.com

seen by experience, in the process of seating a jury, both the government and the defendant participate in the interview process and determine a juror's eligibility to sit on a particular case, and each side is permitted to exercise a certain number of so-called peremptory challenges to prospective jurors, six in the case of the government, ten in the case of the defendant. The jury is instructed that it must be unanimous as to whether a defendant is guilty or not guilty of any given charge.

So, what I'm saying is, you know, by giving up the right to have your case tried before a jury, you give up not only the right to have a jury make the ultimate determination as to whether you are guilty or not guilty, but also the right to participate in the selection of the very jury that would make that decision. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you are entitled to your attorney's assistance throughout the jury selection process and throughout the trial of the case?

THE DEFENDANT: I understand, your Honor.

THE COURT: Do you understand that I would instruct the jury that they must presume you innocent unless or until the government succeeded in proving your



PDF created with pdfFactory trial version www.pdffactory.com

guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, I understand that.

THE COURT: You understand that the burden of proof in a criminal trial is proof beyond a reasonable doubt, a very heavy burden that the government carries throughout the trial?

THE DEFENDANT: I understand that, your Honor.

THE COURT: And you understand that because the burden of proof rests on the government, you would have no obligation to prove your innocence, to call any witnesses, to produce evidence, nor would you be compelled to testify at trial?

THE DEFENDANT: I understand that, your Honor.

THE COURT: Do you understand, on the other hand, that you give up the right to testify in your own defense by pleading guilty if you elected to do that?

THE DEFENDANT: I understand, your Honor.

THE COURT: Do you understand that you give up the right to confront the witnesses against you? That means your attorneys ask questions of the government's witnesses.

THE DEFENDANT: I understand that, your Honor.


PDF created with pdfFactory trial version www.pdffactory.com

THE COURT: Do you understand that you give up the privilege against self-incrimination, the right to remain silent, at least for purposes of this proceeding?

THE DEFENDANT: Yes, your Honor, I do. I understand that.

THE COURT: All right. What I'm going to do now is ask the prosecutor to summarize the evidence that would be presented if the case did proceed to trial, and I know much of what the government alleges, again, because this is a narrative indictment, in large part, is set out in the indictment, but when the government for the record finishes its statement of the evidence, I will have to ask you if, in fact, you agree that you're responsible for the important things that the government alleges are the facts that underlie the charges in the case.

So, by that way of introduction, I ask Mr. Kelly who is going to provide the factual basis.

MR. KELLY: Yes, your Honor. And just one other -- also, the plea -- just for the Court's information, I think at the last hearing Mr. Boozang had made a request about a medical facility. That's not part of the plea agreement. So, that discussion -- this was not pertinent to this plea agreement. It's not part


PDF created with pdfFactory trial version www.pdffactory.com

of the deal. There's no request to send him to a medical facility.

THE COURT: Well, as I understand the sentence issue, although I don't know, but I assume that's something we'll take up at sentencing, in any event.

THE DEFENDANT: If it please the Court, your Honor, could I address that? Would you allow me, Mr. Kelly?

THE COURT: Yes.

MR. KELLY: He's in charge.

THE DEFENDANT: That was done without me really knowing about -- I know it's impossible for them to recommend a medical facility. I don't want the medical facility. I'll take care of myself inside if I'm going to get to a medical facility and relieve the government of any burdens to have to put me in a medical facility. I know how it will be done or if it's going to be done. I appreciate his concern, though.

THE COURT: All right. I think that's something to take up at sentencing, but I think your sense is it would not be an issue that we have to address now.

THE DEFENDANT: Right.

MR. KELLY: With respect to this case, your


PDF created with pdfFactory trial version www.pdffactory.com

Honor, if this matter had proceeded to trial, the government would call numerous witnesses to prove what is essentially a -- although it's a fairly simple case -- there's only two counts -- the gist of the case is this defendant's false statements during a proffer session. We would have to prove a fairly -- and we would prove a fairly long history that I would like to give an overview of for the Court.

The defendant in this case was charged in October of 2004 based upon his false statements that he made in November of 1999, November 2nd, 1999. On that day he was already under indictment in this courthouse before Judge Wolf facing RICO charges, and he came in to give a proffer as part of the plea process and present at the proffer were federal agents and state agents, and they took a lengthy statement from Mr. Salemme.

What gave rise to the charges in this case is a portion of what he said during that 1999 proffer. It pertained to a man named Steven DeSoreau. Mr. DeSoreau was a Boston area businessman who disappeared in May of 1993. He disappeared, as the government would prove at trial, and was murdered.

The government would prove that this, in fact -- this incident arose from a 1992 indictment of this defendant's son. In other words, Frank Salemme,



PDF created with pdfFactory trial version www.pdffactory.com

Jr., was indicted in 1992 in front of Judge Keeton. That case was pending. Frank Salemme, Jr., was out on bail. He got into a brawl at a local nightclub, rock and roll place called The Channel and as a result The Channel generated a lot of media attention, and Mr. DeSoreau was quite friendly with Frank Salemme, Jr., and he was involved with The Channel and it became a matter that was also investigated by the federal authorities.

For whatever reason, members of the local mafia viewed Mr. DeSoreau as a weak link, someone who might possibly testify against them down the road, and the government's proof at trial would be, in fact, that he was killed.

The government remained very interested in his disappearance and has never located his body, nor has anyone ever been charged with his murder, nor do we accuse this defendant, Mr. Salemme, Sr., of his murder, but the government remained interested in trying to solve the disappearance of Mr. DeSareau, and in 1999, when Mr. Salemme began his proffer, that was one of the things that investigators asked him about, and when he was questioned about that matter, he, in fact, gave the government a very -- first of all, he denied any role in or knowledge of the actual murder. He also gave a very


PDF created with pdfFactory trial version www.pdffactory.com

detailed account of an individual whom he suspected was involved, a man by the name of Nicky Bianca. So, the government took that statement and had it for several years.

As the government's investigation proceeded, including acquiring new witnesses, the government had sufficient evidence to prove and it would prove at trial that Mr. Salemme lied during part of that proffer. That is, the government would prove that he lied in two different ways. The government would prove that he gave false statements when he told the government investigators that Mr. Bianco had something to do with Mr. DeSoreau's disappearance and murder.

The defendant is willing to admit to that. We believe it satisfies the element of the offense, and we believe he is, in fact, guilty of that. We would call several witnesses to prove that. We would call several of his former criminal colleagues. We would call at least two of his jailhouse cellmates who we obtained admissions from and we, of course, would call the various investigators who were involved in the case.

If the case had proceeded to trial, we also would have proven, although he continues to deny it, that the defendant was present at the scene of the murder. We would have presented the same testimony of


PDF created with pdfFactory trial version www.pdffactory.com

the same witnesses.

However, for our purposes here today, he's willing to plead guilty to giving false statements about the Bianca matter. We believe for Guideline purposes and for the factual basis for the plea, that is sufficient, and we would urge the Court to accept the plea.

THE COURT: All right. Mr. Salemme, again, I think what is relevant here is the first section of the plea agreement, which is, I think, being indirectly alluded to by Mr. Kelly. Your agreement with the government -- you acknowledge that, according to the plea agreement, that you gave false information deflecting the government away from whoever was responsible for the DeSoreau murder. Again, as the plea agreement very carefully stipulates, you're not accepting or admitting any responsibility for or knowledge of that murder, but you are acknowledging that, in fact, you gave false information about who might be involved, including false information about Mr. Bianca. Is that true?

THE DEFENDANT: That's what I'm pleading to, your Honor, you're correct.

THE COURT: Are you pleading guilty willingly, freely and voluntarily?


PDF created with pdfFactory trial version www.pdffactory.com

THE DEFENDANT: Yes, your Honor, I am.

THE COURT: Has anyone coerced you in a physical sense into pleading guilty?

THE DEFENDANT: No, they haven't.

THE COURT: Have any promises other than those that are set out in the plea agreement or has otherwise been discussed --

THE DEFENDANT: None, your Honor.

THE COURT: -- been made?

Have any threats been made other than, obviously, the threat of being prosecuted?

THE DEFENDANT: No, your Honor.

THE COURT: Have you had sufficient time to discuss with your attorneys the charges in the case, your rights, the possible consequences of pleading guilty?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: Do you believe that they have acted at all times in your best interest?

THE DEFENDANT: What?

THE COURT: Do you believe that they at all times have acted in your best interest?

THE DEFENDANT: Absolutely, yes, your Honor.

THE COURT: Are you or any other counsel


PDF created with pdfFactory trial version www.pdffactory.com

aware of any reason I should not accept the plea?

MR. BOOZANG: We do not, your Honor.

THE COURT: Mr. Salemme, have I confused you by anything I've said or any question I've asked?

THE DEFENDANT: Am I confused?

THE COURT: Yes.

THE DEFENDANT: No. Perfectly clear.

THE COURT: You're pleading guilty because you are guilty of giving this --

THE DEFENDANT: Correct.

THE COURT: Do counsel have any other areas you wish me to inquire into?

MR. KELLY: Not from the government, your Honor.

MR. BOOZANG: May I just have a moment, your Honor?

(Off record discussion.)

MR. BOOZANG: Nothing further, your Honor.

THE COURT: Mr. Salemme, if you wouldn't mind sitting back down at counsel table. There's no reason for you to remain in the DEFENDANT stand.

THE DEFENDANT: I would like to make one correction, if I could, in my testimony?

THE COURT: Yes.

THE DEFENDANT: I won't be 75 until August


PDF created with pdfFactory trial version www.pdffactory.com

18th. I don't want to be responsible for that. Things could happen, your Honor.

(Mr. Salemme steps down.)

THE COURT: I find that the defendant is well oriented, that his answers have been fully responsive to my questions. I find that he understands the nature of the charges. He understands the potential penalties of the cases. I find that he is certainly competent to enter a plea. He's done so with a full understanding of his rights and the consequences of waiving his rights. I find that there is a sufficient basis in the facts presented by the government and the admission made by the defendant in response to the Court's questions to warrant a finding guilt on these two offenses beyond a reasonable doubt.

In sum, I find that the plea is tendered voluntarily, with full knowledge of its consequences and after consideration by the defendant of his own best interests. I will accept the plea. I will, as is the custom, deter acceptance of the plea agreement pending the parties' opportunity to review the presentence report, although, as I understand it, there is unlikely to be any real disagreement at sentencing over the -- either the plea agreement or the terms of the report itself, but, nonetheless, it's a subject to be taken up


PDF created with pdfFactory trial version www.pdffactory.com

at the hearing, if necessary.

I will schedule that hearing for Tuesday, July 15th, 2008, at 2:30 p.m.

Do counsel have anything further for the Court today on this matter?

MR. KELLY: No, your Honor. Thank you.

MR. BOOZANG: No, your Honor.

THE COURT: That being the case, we'll be recessed on this matter until July 15th, 2008.

THE CLERK: All rise. Court is in recess.

(Adjourned, 3:14 p.m.)

C E R T I F I C A T E

I, Catherine A. Handel, Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript from Page 1 to Page 31, constitutes to the best of my skill and ability a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 04-10323-RJS, United States of America vs. Francis P. Salemme, Sr.

January 3, 2017 Catherine A. Handel
/s/ Catherine A. Handel


PDF created with pdfFactory trial version www.pdffactory.com