## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

United States

v.

Paul Weadick

Criminal No. 16-cr-10258-ADB
Civil No. 23-cv-10862-ADB

## Affidavit in Support of Defendant's Motion under 28 U.S.C. § 2255

I, Mark W. Shea, state the following is true to the best of my knowledge, information and belief:

1.    I represented the above-named defendant, in the above-entitled case.

2.    My co-counsel and the initial lead attorney was William Crowe. Mr. Crowe was privately retained. I was appointed by the Court shortly before trial to assist Mr. Crowe and Mr. Weadick in the case (see ECF Nos. 142-146).

3.    The roles were clearly delineated, and Mr. Crowe was in charge.

4.    He assigned me the Government witnesses he wished me to cross-examine. The transcript captures accurately the Government witnesses that Mr. Crowe assigned to me.

5.    At all times Bill Crowe was polite and courteous to me. I found him to be a gentleman. I take no pleasure in penning this affidavit.

6.    The transcript will reveal that I handled the closing argument. This transpired because Mr. Weadick and his family decided to fire Mr. Crowe prior to the closing arguments. They had lost confidence in Mr. Crowe over the course of the trial, but the final straw was the cross-examination of Lara Eldridge.

7.    Throughout the trial, Mr. Crowe was not well organized in his papers. Often, he would pause and search for his place. The effect was that he appeared lost. This problem was particularly pronounced with Lara Eldridge.

8.  The discovery papers regarding Ms. Eldridge were not shared with me until she took the stand, as Mr. Crowe thought the protective order extended to me as his co-counsel.

9.  Lara Eldridge was a critical witness that the Government relied upon in its closing argument. As you can see from my closing, I attempted to blunt its rather devastating effect. In my opinion, if Mr. Crowe had been organized and effective, Ms. Eldridge would have been neutralized or discredited.

10. Another instance of ineffective disorganization was with the witness Darren Wagner. The night prior to the defense's presentation of witnesses, Mr. Crowe asked me to do the direct examination of Mr. Wagner. I was told this individual had helped Paul Weadick get his plumber's license. Phone records would show that I contacted Mr. Wagner that night. The witness did not wish to meet that night but agreed to meet me before court in the cafeteria. Mr. Wagner's story regarding Paul's plumbing license was shared with me in the 30 minutes prior to the start of Court the morning of his testimony. Due to Mr. Crowe assigning me this witness at the last minute, I was unable to check the details of his testimony, particularly on the detail of the timing of the plumbing license.

11. The Government, in the person of William Ferland, was able to show the claims made by Mr. Wagner as to Paul's procurement of the plumber's license were untrue. This damaged my credibility with the jury, and Mr. Ferland highlighted it in his closing argument. At the time I did not know I would be doing the closing argument.

12. The defense's ineffective work extended throughout the defense witnesses. Crazy witnesses, such as John McAveeney, were called by Mr. Crowe. My feelings about how ineffective it was to call this incredible witness is proven by my failure to site him in my closing argument.

Signed under the pains and penalties of perjury this 2⁄ day of April 2023.

_____
Mark W. Shea, Esq.